UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY, a Washington Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 07 C 2397 |
| WHEATON BANK AND TRUST COMPANY, an Illinois Chartered Bank, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Safeco Insurance Company ("Safeco") contracted to act as a surety for Integrated Construction Technology Corporation ("ICTC"), an Illinois construction contractor. ICTC had a deposit account with Wheaton Bank and Trust Company ("the Bank"), and also borrowed more than $4 million from the Bank. When a portion of the debt had matured, the Bank set off a total of $515,000 from ICTC's deposits in order to satisfy its debt. In this action, Safeco contends that this set-off was improper, and that as a result of the Bank's use of ICTC's deposits, Safeco has been forced to pay more than $1.6 million to satisfy ICTC's debts to subcontractors. Safeco claims here that it is entitled to recover some of its losses from the Bank under theories of conversion (Count I), improper use of trust funds held in connection with a mechanics lien waiver under 770 ILCS 60/21.02 (Count II), and constructive trust (Count III).

The Bank has moved to dismiss the Second Amended Complaint for failure to state a claim on which relief can be granted. (Mot. to Dismiss [36].) For the reasons stated below, this motion is granted, and the complaint is dismissed without prejudice.

## BACKGROUND

The following alleged facts are drawn from the Second Amended Complaint ("the Complaint"), and are recounted in the light most favorable to Safeco.

Safeco, a Washington corporation, has its principal place of business in Seattle, and is

licensed to transact surety business in Illinois. (2d Am. Compl. [24, hereinafter "Compl."] ¶ 1.) Safeco agreed to issue payment bonds as a surety for ICTC, a general contractor in the construction industry. (*Id.* ¶ 8.) In consideration for these surety bonds, ICTC entered into an Indemnity Agreement which obligates ICTC to reimburse Safeco for any losses it sustained in its role as a surety. (*Id.* ¶ 6.) One provision of this agreement reads as follows:

> [ICTC agrees] that all monies earned by Contractor [ICTC] under any Contract are trust funds, whether in the possession of the contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety [Safeco] would be liable under any Bond on such Contract . . . .

(*Id.* ¶ 7; Gen. Agr. of Indemnity at 2, Ex. A to Compl.) After entering into this surety agreement, ICTC entered into numerous construction contracts for which Safeco issued surety bonds. (Compl. ¶ 8.)

The Bank is an Illinois chartered bank and lending institution having offices in Wheaton, Illinois. (Compl. ¶ 2.) In the first half of 2005, the Bank gave three loans to ICTC, in a total principal amount of $4.25 million, in exchange for promissory notes maturing in January, May, and November of 2006, respectively. (*Id.* ¶ 10.)

ICTC also maintains a deposit account with the Bank. (Compl. ¶ 12.) Without identifying any individual Bank personnel, Safeco alleges that "[the] Bank learned that" ICTC was a contractor, that ICTC acquired nearly 80% of its receivables from public contracts requiring surety bonds, and that ICTC performed these contracts by hiring subcontractors. (*Id.* ¶ 11.) Furthermore, Safeco alleges that "[the] Bank was aware" that ICTC regularly deposited large sums of money into its account, and, after making such deposits, would routinely make immediate payments of a majority of such funds to its subcontractors, suppliers, and workers. (*Id.* ¶ 12.)

Safeco alleges generally that the funds deposited in ICTC's account were trust funds held for the use and benefit of Safeco as well as ICTC's subcontractors and suppliers. (*Id.* ¶¶ 20-21.) Safeco does not allege, however, that the Bank knew that these deposits were trust funds, nor that

2

the Bank had received or reviewed any documents, such as the Indemnity Agreement, that might put it on notice of any trust relationships.

From June through September of 2006, the Bank set off a total of $515,000 to reduce the principal balance on ICTC's promissory notes. (Compl. ¶ 16.) Because of these set-offs, there were insufficient funds in ICTC's accounts with which to pay outstanding claims to subcontractors and suppliers. (*Id.* ¶ 17.) When ICTC was unable to pay these suppliers, Safeco become obligated as a surety to cover the gap. (*Id.* ¶ 18.) Safeco has already made more than $1.6 million in payments as ICTC's surety, and it expects to become liable for more than $2 million in future payments on ICTC's behalf. (*Id.* ¶¶ 18-19.)

In March of 2007, Safeco made a demand on the Bank for payment of $515,000, which it asserted as a subrogee of the subcontractors it had paid on ICTC's behalf. (Compl. ¶ 23.) The Bank refused to pay (*id.* ¶ 23), and this lawsuit followed.

## **DISCUSSION**

When considering a motion to dismiss, the court tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The plaintiff must plead sufficient facts to give fair notice of the claim and the grounds upon which it rests, and those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level." *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal punctuation omitted); *see Bell Atlantic v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65, 1973 n. 14 (2007). The court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Bank has moved to dismiss all three counts of Safeco's Complaint. The court will consider each Count in turn.

### I. Conversion

Safeco claims that by setting off $515,000 from ICTC's deposit account, the Bank converted

3

that amount from the subcontractors, who had equitable title. (Compl. ¶ 25.) Safeco then claims a right to bring a conversion action against the Bank as an assignee and subrogee of the subcontractors, by virtue of its performance of its suretyship obligations. (*Id.*) In order to state a claim for conversion, a plaintiff must establish that it has a right to certain property, that it has a present and unconditional right to immediate possession of the property, that it made a demand for the return of that property, and that the defendant wrongfully and without authorization refused to return it. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998). Safeco has alleged that it made a demand for the $515,000, and that the Bank did not comply with this demand. (Compl. ¶ 23). Defendant argues, however, that Safeco has not adequately alleged the remaining elements of a conversion claim. The court agrees.

First, neither the subcontractors, nor Safeco as their putative subrogee,[1] have a present and unconditional right to the $515,000 deposited with the Bank. Under Illinois law, when money is deposited with a bank, the bank takes title and becomes a debtor to the depositor, who then becomes the bank's creditor. *See Katz v. Belmont Nat'l Bank of Chicago*, 112 Ill. 2d 64, 68, 491 N.E.2d 1157, 1159 (1986). Because of this principle, when a trustee deposits trust funds into a bank account, only the trustee, not the beneficiary, has an immediate and unconditional right to possess the amount deposited. *Id.* at 69, 491 N.E.2d at 1159. The beneficiaries may seek to recover their funds from their trustee, but may not seek to recover from the bank under a theory of conversion.[2] *Id.*

---

[1] At present, Safeco is pursuing its claim only as a subrogee or assignee of the subcontractors and materials suppliers, and has not stated any claims as a subrogee of ICTC. (*See* Compl. ¶¶ 18-19, 21-23, 25.)

[2] Safeco argues that *Katz* is distinguishable because "it did not involve funds equitably owned by subcontractors" (Resp. at 13 n.13), but this is incorrect. In *Katz*, the complaint alleged that the deposited funds at issue had been held in trust by the depositor for the benefit of the plaintiff and other class members. 112 Ill. 2d at 66, 491 N.E.2d at 1158. *In re Estate of Muhammad* does not alter this analysis, because it held only that a bank may defend against a
(continued...)

Thus, Safeco cannot sue the Bank for conversion based on the subcontractors' alleged equitable interest in ICTC's deposits, because beneficiaries do not have a present and unconditional right to possess bank deposits made by a trustee, even when those deposits include trust assets. *Katz*, 112 Ill. 2d at 68-69, 491 N.E.2d at 1159. There is a second reason why this conversion claim is deficient, however: Safeco has failed to adequately allege that the Bank knew, or should have known, that the set-offs included trust funds.

A bank generally has the right to set off the accounts of its customers in order to satisfy their indebtedness. *Gluth Bros. Constr., Inc. v. Union Nat'l Bank*, 166 Ill. App. 3d 18, 23, 518 N.E.2d 1345, 1349 (2d Dist. 1988). That right does not extend to situations where the bank has either actual or constructive knowledge that such accounts include trust funds, *see id.,* but Safeco has not alleged either that the Bank knew that ICTC's deposits included trust funds, nor that the Bank knew enough about ICTC's business to be on constructive notice.

The Complaint does not contain sufficient allegations to plausibly suggest that the Bank knew or should have known that it was setting-off trust assets. This is not a case like *Gluth Brothers*, in which a bank was provided with a copy of an agreement notifying it that a depositor was regularly in possession of trust assets, raising a plausible inference that the bank knew, or should have known, that specific deposits included trust funds. *See* 166 Ill. App. 3d at 21, 24, 26, 518 N.E.2d at 1347, 1350, 1352. Here, in contrast, the Bank is alleged to have known only that

---

[2](...continued)
conversion action by a trustee by proving that it had paid the beneficiaries directly. *See* 165 Ill. App. 3d 890, 893-94, 520 N.E.2d 795, 797-98 (1st Dist. 1987). *Muhammad* explicitly acknowledged that it was not considering the appropriateness of a conversion action by the beneficiary, which was the issue in *Katz*. *Id.* Finally, Safeco cites *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1132, 822 N.E.2d 454, 463-64 (5th Dist. 2004), to support its argument that a beneficial owner can bring a conversion claim against a trustee-depositor's bank. *Cruthis* did not involve a suit by an account-holder's beneficiary, like the one at issue here and in *Katz*, but rather a conversion claim brought by the account-holder herself against her Bank, premised upon the bank's decision to set off her funds in order to pay her debt to a third party. *Id.* For this reason, it neither discusses nor distinguishes *Katz*, and it has no effect on the court's analysis.

ICTC was a contractor, that it regularly paid subcontractors with the money in its account, and that it primarily performed public contracts requiring surety bonds. (Compl. ¶¶ 11-12.) Although the court draws reasonable inferences in favor of the plaintiff on a motion to dismiss, it is also charged to dismiss a complaint if it does not "plausibly" suggest that a plaintiff is entitled to relief, raising that possibility "above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965-66. The mere fact that a bank knows that its customer regularly pays subcontractors does not plausibly suggest the bank either knows, or should know, that the client holds funds for those subcontractors in trust. Such an inference is exactly the sort of speculative leap that the courts were admonished to avoid. *Id.* at 1965.

The other Illinois cases cited by Safeco do not even discuss the pleading standards applicable to this issue. In *Cruthis v. Firstar Bank, N.A.*, the bank set off an account, not to pay the depositor's debt to the bank, but to pay a debt owed by the depositor to a third party. 354 Ill. App. 3d 1122, 1132, 822 N.E.2d 454, 463-64 (5th Dist. 2004). Similarly, the very early case of *First National Bank of Jerseyville v. Belt* involved the decision of a bank to apply money legally owned by the plaintiff to a third party's debt. 29 Ill. App. 194, 1888 WL 2066, at *2 (3d Dist. 1887). Finally, the earlier appellate ruling in the Elijah Muhammad case is inapposite, as the appeals court held only that the trial court erred by refusing to consider the bank actual knowledge of a trust relationship. *In re Estate of Muhammad*, 123 Ill. App. 3d 756, 760-61, 463 N.E.2d 732, 736 (1st Dist. 1984). None of these cases considered the appropriate pleading standards when a bank is alleged to have setoff funds with actual or constructive knowledge that the depositor was holding those funds for another's benefit, so none can guide the court's inquiry here.

Although *In re Tonyan Constr. Co.*, 28 B.R. 714 (N.D. Ill. Bankr. 1983), does not control, it is nevertheless instructive to compare the pleadings in this case with the proof of notice found sufficient there. In *Tonyan*, a general contractor that was a debtor in bankruptcy sought to recover funds offset by its bank from its deposit account. *Id.* at 716. As is alleged in this case, the bank

in *Tonyan* knew that the depositor was a general contractor who regularly made large payments to subcontractors. *Id.* at 726. In *Tonyan*, however, the court also found that the bank knew that it was customary for subcontractors to submit waivers of lien before receiving payment from a contractor. *Id.* This fact is critical, because under the Illinois Mechanics Lien Act, the delivery of a lien waiver may give rise to a trust relationship between the contractor-depositor and its subcontractors. *See* 770 ILCS 60/21.02(a). Thus, unlike in the present case, *Tonyan* involved facts that plausibly suggested that the bank had reason to know that a substantial portion of deposited funds constituted trust assets.

Furthermore, *Tonyan* involved another fact not alleged here: because of its close scrutiny of the contractor-depositor's account, the bank in that case knew that the deposit it had offset constituted proceeds from a construction project, a substantial portion of which included money owed to a subcontractor. 28. B.R. at 726. Thus, the bank in *Tonyan* had inquiry notice that the deposit included trust funds. *Id.* at 725. Safeco, in contrast, has not alleged that the Bank knew or had reason to know either that ICTC's account included trust funds, or that ICTC regularly required its subcontractors to deliver lien waivers, giving rise to statutory trusts under 770 ILCS 60/21.02. Nor was there an allegation that the Bank knew or had reason to know that the specific deposits it set off included funds owed to subcontractors. Instead, Safeco has alleged only that the Bank knew that ICTC regularly pays subcontractors; that allegation, standing alone, does not create a plausible inference that the Bank should have known that any particular set-off would include trust property.

The court concludes that Safeco has failed to allege that the set-off was a wrongful acquisition of property by the Bank, or that the Bank acted wrongfully by refusing to give Safeco $515,000 on demand. Furthermore, Safeco does not have a present and unconditional right to possess the amount set off by the Bank, because Illinois law does not grant such a right to a depositor's beneficiary, and Safeco is presently suing only in the subcontractor-beneficiaries' stead.

However, Safeco may be able to amend its complaint to correct these defects, by pleading knowledge on the part of the Bank, and by pleading claims subrogated from ICTC, rather than from its trustees. Therefore, Count I is dismissed without prejudice.

## II. Mechanics Lien Act Claim

In Count II, Safeco purports to state a claim under the Mechanics Lien Act ("the Act"), 770 ILCS 60/21.02. The Act governs the situation when a person demands a mechanics lien waiver as a condition of payment in a real estate improvement contract. *Id.* at 21.02(a). Specifically, the Act requires that any sums received as the result of a waiver be held in trust for the person who delivered the waiver. *Id.* If a person subject to the Act appropriates such assets, the Act creates a cause of action against that person in favor of anyone who suffers damages as a result of the breach of trust. *Id.* at 21.02(c).

The Act plainly does not apply here. Only "owner[s], contractor[s], subcontractor, [and] material supplier[s]" may be held liable under the Act.[3] *Id.* A bank with which a contractor deposits money is not on this list, and therefore, under the plain language of the Act, there is no right of action created against a bank that sets off funds held by a contractor in trust for a subcontractor.[4]

Safeco nevertheless argues that, because the Act was intended to benefit subcontractors, it should be interpreted as authorizing a claim against the Bank. (Resp. at 13.) This argument

---

[3] Subsection (c) reads as follows:

(c) Violation of this Section. Any owner, contractor, subcontractor, or material supplier who knowingly retains or used the moneys held in trust under this Section or any part thereof, for any purpose other than to pay those for whom the moneys are held in trust, shall be liable to any person who successfully enforces his or her rights under this Section for all damages sustained by that person.

770 ILCS 60/21.02(c).

[4] Safeco argues that it adequately pleaded the creation of statutory trusts under subsection 21.02(a), and that this is sufficient to establish a right to recovery. (Resp. at 14.) Only subsection (c) creates a right to enforce the trusts created by subsection (a), however.

ignores the Act's language, which provides shelter to subcontractors in a prescribed way: it allows them to sue owners, contractors, subcontractors and material suppliers if those parties fail to hold certain funds in trust for the subcontractor's benefit. The fact that the legislature intended to protect subcontractors does not require the conclusion that every imaginable protection be extended, nor does that intention provide a basis for ignoring the plain language of the Act. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 567 (2005) (stating that when the language of a statute is clear and unambiguous, arguments based solely on legislative intent can properly be disregarded). Count II is dismissed with prejudice.

### III.     **Constructive Trust**

Finally, the Bank moves to dismiss Safeco's claim for the imposition of a constructive trust on the $515,000, which would require the Bank to turn the money over to Safeco. A constructive trust is a remedial device, by which a court may declare that a person wrongfully in possession of property is a constructive trustee, with the sole and immediate duty to transfer title and possession to the property's rightful owner. *Suttles v. Vogel*, 126 Ill. 2d 186, 193, 533 N.E.2d 901, 904 (1988). Some form of wrongdoing on the part of the possessor must be found before a court may impose a constructive trust. *Id.* at 193, 533 N.E.2d at 905.

When a bank sets off a depositor's assets while knowing that the depositor was holding those assets in trust for a third party, it is chargeable as a constructive trustee. *Gluth Bros.*, 166 Ill. App. 3d at 26-27, 518 N.E.2d at 1352. In the absence of actual knowledge that the assets include trust funds, however, a constructive trust is not an appropriate remedy. *See E. Peoria Cmty. High Sch. Dist. No. 309 v. Grand Stage Lighting Co.*, 233 Ill. App. 3d 481, 484, 601 N.E.2d 976, 978 (3d Dist. 1992) (holding that the *Gluth Brothers* doctrine does not apply where a bank is not aware that it is setting off trust assets). As discussed earlier, Safeco has failed to adequately allege that the Bank had actual or constructive knowledge that ICTC's deposits were held in trust for the subcontractors. In the absence of any culpable knowledge or negligence, there is no basis

in either Illinois caselaw or the principles of equity to impose a constructive trust upon the Bank. *See Suttles*, 126 Ill. 2d at 193, 533 N.E.2d at 904-05 (noting that constructive trusts are only imposed when the defendant has acted wrongfully). Therefore, this last claim is also dismissed without prejudice.[5]

## CONCLUSION

For the reasons stated above, the Bank's Motion to Dismiss Safeco's Second Amended Complaint [36] is granted. The Complaint is dismissed without prejudice. If Safeco wishes to file a further amended complaint, it must do so within fourteen days.

ENTER:

Dated: January 24, 2008

REBECCA R. PALLMEYER
United States District Judge

---

[5] In light of this resolution, the court need not address the Bank's argument that its perfected security interest takes priority over Safeco's rights, an issue the Illinois courts have not addressed. It is generally presumed, however, that Article 9 of the Uniform Commercial Code does not displace equitable remedies, such as the court's power to impose a constructive trust. *See Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill. App. 3d 370, 381, 649 N.E.2d 511, 518 (1st Dist. 1995). Thus, if the Bank had knowingly applied a set-off to trust assets, the court assumes, without deciding, that it would have the power to impose a constructive trust to correct the resulting injustice. Similarly, the court will not address the contention that Safeco has not adequately pleaded its right to recover as a subrogee or assignee of the subcontractors, beyond noting its view that, *if* the subcontractors were entitled to obtain a constructive trust over the $515,000 at the time of a subrogation or assignment, a subrogee or assignee might well succeed into that right.